# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

**JERRY WAYNE BEASLEY**                                                          **PLAINTIFF**

V.                             NO. 4:16CV00767-JTR

**NANCY A. BERRYHILL,**
Acting Commissioner,
**Social Security Administration**                                    **DEFENDANT**

## ORDER

### I. Introduction:

Plaintiff, Jerry Wayne Beasley, applied for supplemental security income benefits on September 21, 2011, alleging his disability began on May 28, 2007. (Tr. at 98). His claims were denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Beasley's application. (Tr. at 109). Thereafter, the Appeals Council remanded the case for another hearing. (Tr. at 114).

After conducting a second hearing, on December 9, 2014 (Tr. at 49) and May 27, 2015 (Tr. at 72), the ALJ denied Beasley's application, and that decision (Tr. at 25) now stands as the final decision of the Commissioner. Beasley has requested judicial review.

For the reasons stated below, the Court [1] affirms the decision of the Commissioner.

## II. **The Commissioner's Decision:**

The ALJ found that Beasley had not engaged in substantial gainful activity since the application date of September 21, 2011 (Tr. at 13). At Step Two, the ALJ found that Beasley has the following severe impairments: frozen left shoulder, back pain, coronary artery disease, history of aortic regurgitation and moderate to severe aortic insufficiency (post-operative valve replacement), hypertension, and depression. *Id*.

After finding that Beasley's impairments did not meet or equal a listed impairment (Tr. at 13), the ALJ determined that Beasley has the residual functional capacity ("RFC") to perform the full range of light work, except that: (1) he can only do occasional pushing and pulling with his non-dominant arm; (2) he is limited to work where interpersonal contact is incidental to the work performed and the complexity of tasks is learned and performed by rote, contains few variables, and requires little judgment; and (3) the supervision required is simple, direct, and concrete. (Tr. at 16).

Because the ALJ found that Beasley had no past relevant work (Tr. at 24), the

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Beasley's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform, including work as a cashier II, office helper, and marking clerk. (Tr. at 25). Accordingly, the ALJ held that Beasley was not disabled. *Id.*

## III. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in

the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d. at 477.

B. Beasley's Arguments on Appeal

Beasley argues that substantial evidence does not support the ALJ's decision to deny benefits. He contends that: (1) the ALJ erred in determining his RFC because he did not fully credit the opinions of Beasley's treating physicians; and (2) the ALJ erred in asking the VE an improper hypothetical question.[2]

Beasley suffered from aortic regurgitation in May 2014. (Tr. at 621). Dr. Michael Nolen, M.D., a cardiologist, performed an aortic valve replacement on June 2, 2014. (Tr. at 656). The surgery went well: Beasley had a normal post-op chest x-ray and a normal post-op exam after the surgery. (Tr. at 658-659). A clinic note from June 20, 2014 indicates he could start progressive walking as tolerated. (Tr. at 697). At visits on June 24, 2014 and December 2, 2014, Beasley showed a normal heart rate and rhythm with no murmurs. (Tr. at 688, 690). Beasley appeared in no acute distress and was well-nourished and well-developed at those appointments. *Id*. Objective tests showing mild to moderate conditions do not support a finding of

---

[2]While Beasley suffers from mental impairments that limit him to unskilled work, he did not address mental impairments in his brief. Accordingly, there is no reason to address that issue.

4

disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004). (Tr. at 688-690). Beasley did not report for follow-up after 2014. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (when a claimant has not treated his anxiety, the ALJ is justified in ruling out anxiety as an impairment). With respect to Beasley's heart condition, the record does not reflect an impairment that would result in disabling limitations.

Beasley also raises left shoulder pain as grounds for a finding of disability. He complained of left shoulder pain, but did not have an MRI, did not undertake physical therapy, did not see a pain specialist, and did not seek surgical intervention. The need for only conservative treatment contradicts allegations of disabling pain. *Id*. Left shoulder x-rays in 2010 and 2011 revealed mild spurring but no dislocation or fracture. (Tr. at 485, 530). In May 2014, Beasley showed normal motor strength in upper and lower extremities with an intact sensory exam. (Tr. at 621). Furthermore, at the hearing, Beasley said he once had a "frozen shoulder," but "*not now*." (Tr. at 83). Thus, his shoulder problem appears to have resolved.

This improvement is borne out by Beasley's daily activities. He indicated on a function report that he could prepare meals daily, get outside every day, walk, ride in a car, shop in stores for groceries, and spend time with others. (Tr. at 344-346). Such daily activities undermine his claims of disability. *Edwards v. Barnhart*, 314

F.3d 964, 967 (8th Cir. 2003); *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995).

In spite of the foregoing medical evidence supporting the ALJ's finding, Beasley asserts that his treating doctors' opinions provide for an opposite result. It is the ALJ's function to review all of the medical evidence and resolve conflicts among the various treating and examining physicians. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007); *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). A treating physician's opinion must be discussed by the ALJ and, if rejected, reasons are necessary. *Ingram v. Charter*, 107 F. 3d 598, 602 (8th Cir. 1997); *Prince v. Bowen*, 894 F.2d 283 (8th Cir. 1990). A treating physician's opinion should be granted controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *Miller*, 784 F.3d at 477.

Beasley points to a medical source statement from Dr. Ivy McGhee, M.D., whom he visited on only two occasions. (Tr. at 554-555). After his first visit on February 7, 2012, Dr. McGhee completed the medical source statement, without administering any clinical testing. In this statement, she checked boxes indicating that Beasley could not even perform sedentary work, without any reference to any objective testing or clinical exams. *Id*. A conclusory checkbox form has little evidentiary value when it cites to no medical evidence and provides no elaboration.

*Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012). Finally, the statement was issued two years before the cardiac complaints and aortic valve surgery that Beasley relies upon for his disability claim. When Dr. McGhee did write a letter, in February 2013, she noted that medication and medical visit compliance was a major issue. (Tr. at 613-614). A claimant's non-compliance with treatment is a legitimate consideration in evaluating the validity of his alleged disability. *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001). Dr. McGhee did not place any functional restrictions on Beasley. A lack of physician-imposed restrictions may serve as a reason to discredit a claimant's credibility. *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003). Finally, Dr. McGhee's statement seemed to rely heavily on subjective statements from Beasley, as she did not reference clinical objective evidence to support her opinion. An ALJ is entitled to give less weight to the opinion of a treating physician where the physician's opinion is based largely on the claimant's subjective complaints rather than on objective medical evidence. *See Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005). The ALJ properly evaluated Dr. McGhee's opinion.

Beasley also relies upon the statements of Dr. Michael Nolen, M.D., the cardiologist who performed aortic valve replacement on June 2, 2014. (Tr. at 656). Beasley had a normal post-op chest x-ray and a normal post-op exam after the

surgery. (Tr. at 658-659). Nevertheless, Dr. Nolen issued a long-term disability status report the day after surgery, which suggested Beasley was virtually incapacitated. (Tr. at 632). Dr. Nolen said Beasley could do no walking, sitting, or standing, and could not lift or drive. *Id.* This contradicts the clinic note from June 20, 2014 that says he should start progressive walking as tolerated. (Tr. at 697). And as detailed above, in office examinations on June 24, 2014 and December 2, 2014, Beasley showed a normal heart rate and rhythm with no murmurs. (Tr. at 688, 690). Furthermore, Beasley did not report for follow-up after 2014. Thus, the Court concludes that Dr. Nolen's opinion was not reflective of Beasley's post-operative progress.

The non-examining state agency medical consultants' opinions were more in line with the mild objective evidence. They each assigned a light RFC with limited pushing and pulling in the left upper extremity. (Tr. at 543, 463).

The ALJ properly discredited the opinions of Beasley's treating doctors, which did not find support in the record. Weighing the opinions and objective evidence, the ALJ formulated a proper hypothetical, which included all of Beasley's limitations. A hypothetical question is properly formulated if it sets forth impairments "supported by substantial evidence in the record and accepted as true by the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). The RFC

likewise contemplated all of the objective evidence: the sporadic and conservative treatment, mild objective testing results, improvement post-surgery, and consistent opinions of the state doctors all supported the RFC for light work.

**IV.  Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly evaluated the opinions of Beasley's treating physicians and incorporated all of his limitations in both the hypothetical and the RFC.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is AFFIRMED, and Beasley's Complaint is DISMISSED, with prejudice.

DATED this 30th day of November, 2017.

_____
UNITED STATES MAGISTRATE JUDGE